IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| ANA LIDIA OROZCO, | Civ. No. 2:19-cv-00060-SU |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| LAMB WESTON, INC., | |
| Defendant. | |

SULLIVAN, Magistrate Judge.

  Plaintiff Ana Lidia Orozco brings this action against her former employer, Defendant Lamb Weston, Inc., alleging denial of protected family leave and disability discrimination. All parties have consented to magistrate jurisdiction. ECF Nos. 3, 28. This matter comes before the Court on a Motion for Summary Judgment filed by Defendant. ECF No. 13. The Court heard oral argument on the motion on January 28, 2020. ECF No. 29. Following oral argument, the Court gave the parties leave to file limited supplemental briefing on the *McDonnell Douglas* burden-

shifting issue.[1] That briefing has now been submitted. ECF Nos. 30, 31. For the reasons discussed below, Defendant's Motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

---

[1] The Court notes that Plaintiff's Supplemental Brief devotes only two pages to the *McDonnell Douglas* issue and goes far beyond the bounds of supplemental briefing permitted by the Court to address Defendant's other arguments on the motion for summary judgment. This is, as Defendant points out, an inappropriate "second bite at the apple." In an abundance of caution, however, the Court has considered Plaintiff's additional untimely arguments and found they do not alter the Court's analysis.

## BACKGROUND

Plaintiff Ana Lidia Orozco began working for Defendant Lamb Weston, Inc. as a general laborer in a potato processing plant in Boardman, Oregon on October 3, 2016.  Cooper Decl. ¶ 2. ECF No. 14.

The general laborer position "requires rotating among several positions in order to accommodate the varying needs of the plant."  Cooper Decl. at ¶ 3; *see also* Olson Decl. Ex. J, at 2-3.  ECF No. 15.  According to the job description, one of the "Essential Duties and Responsibilities" of the position is to "rotate[] to all General Labor work stations to complete assigned tasks."  Second Cooper Decl. Ex. K, at 1.  ECF No. 25.  The position also requires the general laborer to "lift cases up to 40 pounds continuously."  *Id.* at 2.  "The noise level in the work environment is usually very loud and the floors are wet and slick."  *Id.* at 5.

On February 5, 2017, Plaintiff submitted a doctor's note to Defendant indicating that she was restricted to light work with no lifting over fifteen pounds for seven days.  Cooper Decl. Ex. B.

On February 16, 2017, Plaintiff submitted a second doctor's note excusing her from work for a week.  Cooper Decl. Ex. C.  During this period Plaintiff exhausted her accrued sick leave and switched to unpaid leave.  Cooper Decl. ¶ 5.

On March 30, 2017, Plaintiff submitted a third doctor's note, indicating that she was under "OB care" and excusing Plaintiff from work from March 30, 2017, to April 30, 2017.  Cooper Decl. Ex. E.  Plaintiff did not work any shifts for Defendant after March 27, 2017.  Cooper Decl. Ex. A, at 4.

On April 5, 2017, Plaintiff submitted a fourth doctor's note notifying Defendant that Plaintiff was pregnant.  Cooper Decl. Ex. F.  The April 5 note indicated that Plaintiff was limited

to frequent standing and walking and occasional twisting, turning, crouching, squatting, climbing ladders or stairs, reaching, balancing, bending, or stooping. *Id.* In addition, the doctor reported that Plaintiff must have ready access to a bathroom and could not work more than approximately 100 feet from the nearest bathroom. *Id.* Plaintiff could not lift or carry more than 20 pounds or push more than 35 pounds. *Id.* Plaintiff was also restricted from standing on wet, slippery, or unstable surfaces and steep slopes. *Id.* On the same day, April 5, 2017, a fifth doctor's note excused Plaintiff from all work for two to three days. Cooper Decl. Ex. G.

On April 27, 2017, Defendant's third-party benefits provider denied her requests for family leave, on the ground that she was not eligible, and her request for short-term disability, on the ground that the "[m]edical information did not support disability." Cooper Decl. Ex. D.

Mike Cooper, Defendant's Human Resources Manager, discussed Plaintiff's medical restrictions with Plaintiff and found that no accommodation could be made. Cooper Decl. ¶ 10. Defendants maintain that the floor is wet and slippery at all general laborer stations and that all but one of the workstations in Plaintiff's rotation are over 100 feet from the nearest restroom. *Id.* Plaintiff contends that there was a single station near a restroom where the floor was not wet. Vall-llobera Decl. Ex. 1, at 54. ECF No. 20-1.

At some point, Cooper received notice from Legal Services of Oregon indicating that Plaintiff believed she had been terminated by Defendant. Cooper Decl. ¶ 11. Cooper responded on July 11, 2017, by sending Plaintiff a letter explaining that she remained an employee of Defendant on a leave of absence. Cooper Decl. Ex. H. The letter advised Plaintiff that her employment had not been terminated. *Id.* Cooper invited Plaintiff to contact Defendant's Human Resources department when she had been released to work with or without restrictions. *Id.* Cooper indicated that Defendant wished to discuss reasonable accommodations and the possibility of

Plaintiff returning to her original general laborer position or to another position. *Id.* Cooper also offered to evaluate "whether, if necessary, an additional period of unpaid leave would be an effective reasonable accommodation." *Id.*

Plaintiff was scheduled to return to work on December 9, 2017, but she did not report for work. Cooper Decl. ¶ 12. Plaintiff reported for work on December 10, 2017, at her previous position with the same benefits, but Plaintiff only worked a single day before she "abandoned her job without notifying the company." *Id.* Defendant subsequently received notice that Plaintiff had filed for unemployment benefits and had indicated in her application that she had left her position voluntarily. *Id.*

On January 3, 2018, Cooper sent Plaintiff another letter seeking clarification of her status and notifying her that if he did not hear from Plaintiff by the close of business on January 10, 2018, Defendant would understand that Plaintiff had voluntarily left her employment. Cooper Decl. Ex. I. Plaintiff did not respond to the January 3 letter and so Defendant terminated Plaintiff's employment on January 11, 2018. Cooper Decl. ¶ 14.

## DISCUSSION

Plaintiff brings claims for (1) interference with protected medical leave in violation of the Oregon Family Leave Act ("OFLA"), ORS 659A.183; (2) disability discrimination in violation of the Oregon Rehabilitation Act, ORS 659A.112; and (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. Defendant moves for summary judgment as to all claims.

As a preliminary matter, the Court notes that Plaintiff's brief Response in Opposition to Defendant's Motion for Summary Judgment, ECF No. 20, is almost devoid of citations to the record and accompanied only by Plaintiff's unabridged 182-page deposition transcript. ECF No.

20-1. This is, as Defendant points out, improper. It is not the task of the Court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks and citation omitted). Rather, it is Plaintiff's responsibility as the nonmoving party "to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* If, as in this case, "'the nonmoving party fails to discharge that burden . . . its opportunity is waived and its case wagered.'" *Id.* (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992)).

The Court has endeavored to address Plaintiff's arguments, but it cannot step into the shoes of Plaintiff's counsel and hunt for triable issues in the record on Plaintiff's behalf.

I. **Oregon Family Leave Act**

Plaintiff's first claim for relief alleges that Defendant interfered with her protected family leave under the OFLA. ORS 659A.183 provides that it is unlawful for an employee to deny family leave to an eligible employee or to retaliate or discriminate against an employee with respect to hire, or tenure, or any other term or condition of employment because that employee inquired about the provisions of the OFLA, submitted a request for family leave, or invoked any provision of the OFLA.

Defendant moves for summary judgment on this claim on the basis that Plaintiff was not eligible for OFLA leave when she applied for it. An employee is not entitled to OFLA leave if she was "employed by the covered employer for fewer than 180 days immediately before the date on which the family leave would commence." ORS 659A.156(1)(a); OAR 839-009-0210(6)(b) ("For purposes of taking all other types of OFLA leave, including pregnancy disability leave, an employee must have worked for a covered employer for an average of at least 25 hours per week during the 180 calendar days immediately preceding the date OFLA leave begins."); *see also*

*Yeager v. Providence Health Sys. Ore.*, 195 Or. App. 134, 139 (2004) ("[A]n employee is not eligible for OFLA-covered leave if the employee has worked for the employer for fewer than 180 days immediately before the date on which the leave would commence.").

In this case, Plaintiff was hired on October 3, 2016.  Cooper Decl. ¶ 2.  Plaintiff requested family leave beginning on March 30, 2017.  Cooper Decl. Ex. D; *see also* Compl. ¶¶ 4-5 (alleging that Plaintiff requested family leave beginning March 30, 2017).  Plaintiff had only been employed by Defendant for 178 days at the time her requested leave would have commenced and did not meet the 180-day threshold required by ORS 659A.156(1)(a) and OAR 839-009-0210(6)(b).  Plaintiff suggests that the Court should count her leave as beginning on April 5, 2017, but that suggestion is contrary to both the record and the allegations of the Complaint, both of which indicate Plaintiff requested family leave commencing on March 30, 2017.

The Court also notes that, OFLA ineligibility notwithstanding, Plaintiff was not fired or prevented from returning to work after she was medically cleared and that she eventually returned to work with no loss of benefits.  Cooper Decl. ¶¶ 11-12.  In the absence of damages, an OFLA/FMLA claim fails.  *Doby v. Sisters of St. Mary of Ore. Ministries Corp.*, No. 3:13-cv-0977-ST, 2014 WL 3943713, at *10 (D. Or. Aug. 11, 2014).

To the extent Plaintiff seeks to base her OFLA claim on the failure to provide intermittent leave, the claim fails because, as discussed in the following section, she was unable to perform the essential functions of her position.  *See Clink v. Ore. Health and Sci. Univ.*, No. 3:13-cv-01324-SI, 2014 WL 3850013, at *5 (D. Or. Aug. 5, 2014) ("Individuals who are unable to perform the essential functions of their positions are not entitled to FMLA benefits, including the right to take protected intermittent leave."); *see also Gillis v. Wal-Mart Stores, Inc.*, No. 03:11-cv-01520-HZ, 2013 WL 1623925, at *6 (April 15, 2013) (rejecting claims for OFLA interference based on denial

of intermittent leave when the plaintiff provided no evidence that she could work intermittently during pregnancy when her own healthcare provider stated that she needed continuous leave because she was incapacitated).

On this record, Plaintiff was not eligible for OFLA leave and so Defendant's motion is GRANTED as to this claim.

## II.     Disability Discrimination

Plaintiff's second claim, for disability discrimination under the Oregon Rehabilitation Act, ORS 659A.112, and her third claim, for violation of the ADA, 42 U.S.C. § 12112, are closely related. Both claims allege discrimination and retaliation on the basis of disability, as well as the failure to offer reasonable accommodations.

Both the ADA and the Oregon Rehabilitation Act prohibit discrimination on the basis of disability in hiring, advancement, compensation, or other terms and conditions of employment. *See* 42 U.S.C. § 12112(a) (prohibiting discrimination on the "basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."); ORS 659A.112(1) ("It is unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability.").

To state a prima facie case of employment discrimination under § 12112, a plaintiff must allege (1) that she is "disabled" within the meaning of the ADA; (2) she is a "qualified individual" as defined by the ADA; and (3) she suffered an adverse employment action on the basis of her disability. *Davis v. Tri-County Metro. Transp. Dist.*, 45 F. Supp.3d 1222, 1246 (D. Or. 2014) (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)).

The Oregon Rehabilitation Act, ORS 659A.103 to 659A.144, is to be "construed to the extent possible in a manner that is consistent with any similar provision of the federal Americans with Disabilities Act of 1990, as amended by the federal ADA Amendments Act of 2008 and as otherwise amended." ORS 659A.139(1). In practical terms, this means that "[t]he standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law." *Snead v. Metro. Prop. Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001).

Federal courts apply the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to claims under the ADA and the Oregon Rehabilitation Act. *See, e.g., Kelly v. Boeing Co.*, 400 F. Supp.3d 1093, 1107 (D. Or. 2019) ("The Court applies the familiar burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green* to ADA and Oregon disability discrimination and retaliation claims." (internal quotation marks and citation omitted)). Although Plaintiff argues that the *McDonnell Douglas* burden-shifting framework is optional, Pl. Br. 9, the Ninth Circuit has held that "when entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity *must* apply the *McDonnell Douglas* burden shifting scheme as a federal procedural rule." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001) (emphasis added); *see also Dawson v. Entek Int'l*, 630 F.3d 928, 935 (9th Cir. 2011) ("*Snead* represents the law of this circuit and applies in all cases in federal district court in which the choice between federal and state procedural law is presented.").

Under *McDonnell Douglas*, "an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of discrimination (or retaliation)." *Curley v. City of North Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). "The burden then shifts to the employer to provide a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse

employment action." *Id.* "If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual." *Id.*

In the present case, Defendant moves for summary judgment on the basis that (1) Plaintiff could not perform the essential functions of her position, even with reasonable accommodations, and (2) Plaintiff did not suffer an adverse employment action and so has failed to state a prima facie case.

### A. Essential Functions

Defendant contends that, even with reasonable accommodations, Plaintiff could not perform the essential functions of the general laborer position, or any other position on the plant floor, with her assessed restrictions. As part of the prima facie case under the ADA, a plaintiff must establish that she "is a qualified individual able to perform the essential functions of the job with reasonable accommodation." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003). "Determining whether Plaintiff is a 'qualified individual' requires the Court to consider whether Plaintiff was able to perform the essential functions of the position at the time of her termination *without* accommodation, and then, if she cannot, whether she was able to do so *with* reasonable accommodation." *Huitt v. Optum Health Servs.*, 216 F. Supp.3d 1179, 1188 (D. Or. 2016) (internal quotation marks and citation omitted, alterations normalized, emphasis in original).

The "essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires," not including "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A function may be deemed essential for any of several reasons, including "because the reason the position exists is to perform that function." 29 C.F.R. § 1630.2(n)(2)(i). Evidence that a function is essential includes (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or

interviewing applicants for the job; (3) the amount of time spent on the job performing the functions; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3). However, "[t]he ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees." *Dark v. Curry Cnty.*, 451 F.3d 1078, 1089 (9th Cir. 2006).

In the present case, Defendant has submitted evidence, including a job description dated July 2016, showing that the essential functions of the general laborer position included the ability to lift up to 40 pounds and to work in wet and slick conditions. Second Cooper Decl. Ex. K. The position also required the employee to move between the various general laborer stations as needed throughout the shift. *Id.*; Cooper Decl. ¶ 3. Plaintiff confirmed this in her deposition testimony. Olson Decl. Ex. J, at 2. It is clear from the record that Plaintiff could not perform the essential functions of the general laborer position without accommodations.

Although Defendant has presented evidence that all the stations were wet and slippery, Cooper Decl. ¶ 10, Plaintiff testified in her deposition that there was a single station that was not wet. Olson Decl. Ex. J, at 3. Plaintiff testified that she believed a reasonable accommodation would have been to restrict her to working only in that one station. *Id.* This ignores the fact that rotating between stations is itself an essential function of the general laborer position. Second Cooper Decl. Ex. K, at 1. The result of such an accommodation would have been to shift the essential function of switching between stations to Defendant's other general laborer employees. On this record, the Court concludes that Plaintiff was unable to perform the essential functions of

her position, even with accommodations.[2]  This is fatal to Plaintiff's disability discrimination claims.

### B. Adverse Employment Action

Defendant contends that Plaintiff did not suffer an adverse employment action.  "'To qualify as adverse, the action must be more disruptive than a mere inconvenience or alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished job title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'"  *Marrazzo v. Leavitt*, 719 F. Supp.2d 1297, 1307 (D. Or. 2010) (quoting *Crady v. Liberty Nat. Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).  However, "[p]otentially adverse employment actions that are not final or lasting are insufficient to constitute actionable adverse actions."  *Id.*

In this case, Plaintiff was not terminated during the period of her disability.  Cooper Decl. Ex. H ("To be perfectly clear your employment has not been terminated.").  Consistent with her doctor's orders, Plaintiff was prevented from working as a general laborer during her pregnancy, but Defendant informed her in writing that she has not been fired and that it would be open to discussing her return to work in a position where she could perform the essential functions with or without accommodation.  Cooper Decl. Ex. H.  Plaintiff returned to work as a general laborer in December 2017, although she abandoned the job within a day.  Cooper Decl. ¶ 12.  On this record, the Court cannot conclude that Plaintiff suffered an adverse employment action

---

[2] In her original Response, Plaintiff briefly mentions the possibility of intermittent leave. Pl. Resp. 2-3.  ECF No. 20.  In her supplemental brief, Plaintiff appears to contend that she would have been able to perform the essential functions of her position with the benefit of intermittent leave. Pl. Supp. Br. 8.  It is not clear how the use of intermittent leave would have alleviated the need to change workstations or lift 40 pounds.  Furthermore, the use of FMLA leave is "a right held by those able to perform the essential functions of their job, not those who must rely on FMLA leave to do so." *Clink v. Ore. Health and Sci. Univ.*, No. 3:13-cv-01324-SI, 2014 WL 3850013, at *6 (D. Or. Aug. 5, 2014).

As Plaintiff cannot demonstrate that she was able to perform the essential functions of her position, with or without accommodations, and cannot demonstrate that she suffered an adverse employment action, she has failed to state a prima facie case of disability discrimination.

Even if Plaintiff had stated a prima face case, she has failed to meet her burdens under the *McDonnell Douglas* framework. Defendant has presented evidence that it could not safely accommodate Plaintiff's medical limitations, particularly with regard to the wet and slippery conditions in the plant. Plaintiff has not shown, or even argued, that Defendant's proffered justification was pretextual. "[M]erely expressing a belief that an employer's actions are improper without providing additional evidence supporting that belief is not enough to present a triable issue of material fact." *Lanyon v. Interfor U.S., Inc.*, Case No. 1:16-cv-2058-MC, 2018 WL 1976023, at *4 (D. Or. April 26, 2018). This failure supplies an additional justification for granting Defendant's motion.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's second and third claims.

## CONCLUSION

Defendant's Motion for Summary Judgment, ECF No. 13, is GRANTED. Plaintiff's claims are DISMISSED and final judgment will be entered in this case.

It is so ORDERED and DATED this 23rd day of April, 2020.

/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge